PHILLIP A. TALBERT
United States Attorney
JASON HITT
AARON D. PENNEKAMP
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-109-TLN |
|---|---|
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR BAIL REVIEW |
| v. | |
| JAIME ALVAREZ, | DATE: May 31, 2022<br>TIME: 2:00 p.m.<br>COURT: Hon. Jeremy D. Peterson |
| Defendant. | |

The United States respectfully submits its opposition to Defendant Jaime Alvarez's motion for bail review, which seeks to reopen this Court's initial decision denying bail. *See* Dkt. Nos. 7, 10. For the reasons explained below, the Court should deny Alvarez's motion.

## I.  LEGAL STANDARDS

When Congress amended the Bail Reform Act in 1984, it reflected "the deep public concern . . . about the growing problem of crimes committed by persons on release" and the recognition that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community." *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6 7, reprinted in 1984 U.S. Code Cong. & Ad. News, P.L. 98 473, at 3188 3189). "Congress has determined that '[w]here there is a strong probability that a person will commit

1  additional crimes if released, the need to protect the community becomes sufficiently compelling that
2  detention is, on balance, appropriate.'" *Chimurenga*, 760 F.2d at 403 (quoting Senate Report at 3189).

3        As a result, the Bail Reform Act of 1984 allows the release of a criminal defendant in firearms-
4  related cases only after the Court finds that there are conditions or a combination of conditions that
5  would reasonably assure the defendant's appearance and the safety of the community.  *See* 18 U.S.C.
6  § 3142(f)(1)(E) (allowing for detention "upon motion" of the government "in a case that involves . . .
7  any felony . . . that involves the possession or use of a firearm").  There are several evidentiary standards
8  at play in this analysis.  For example, whether to detain a defendant as a flight risk pending trial is
9  determined by a preponderance of the evidence.  *See United States v. Motamedi*, 767 F.2d 1403, 1407
10 (9th Cir. 1985).  Separately, "[a] finding that a defendant is a danger to any other person or the
11 community must be supported by 'clear and convincing evidence.'"  *United States v. Hir*, 517 F.3d
12 1081, 1086 (9th Cir. 2008

13       Once a Court has entered a detention decision, the Bail Reform Act allows a detention hearing to
14 be reopened only "if the judicial officer finds that information exists that was not known to the movant
15 at the time of the hearing and that has a material bearing on the issue whether there are conditions of
16 release that will reasonably assure the appearance of such person as required and the safety of any other
17 person and the community." 18 U.S.C. § 3142(f).  But the factors the Court must consider in making its
18 release or detention decision are the same as in the initial detention proceeding.  That is, in reaching its
19 decision, the Court should consider:  (1) the nature and circumstances of the offense charged; (2) the
20 weight of the evidence against the defendant; (3) the history and characteristics of the defendant,
21 including his ties to the community, past conduct, and employment history; and (4) the nature and
22 seriousness of the danger to any person or the community that would be posed by the defendant's
23 release.  *See id.* § 3142(g).  Here, because each of these statutory factors continues to support detention,
24 Alvarez's bail review motion should be denied.

25                 **II.**        **ARGUMENT**

26     **A.**    **The Nature and Circumstances of Alvarez's Present Offense Highlight the Danger He Poses to the Community**

27       The first factor listed in section 3142(g) weighs in favor of detention.  Here, the government has
28

charged Alvarez with being a felon in possession of a Glock 27 handgun in violation of 18 U.S.C. § 922(g)(1).  But while the government has—for the moment—charged Alvarez with the possession of just one firearm, that single charge does not capture the full extent of Alvarez's danger.  Here, law enforcement found a small arsenal of firearms in and around Alvarez's master bedroom, including not just the charged Glock 27, but also, for example, three additional handguns, two shotguns, an AK-47-style rifle, and what appears to be an unserialized, AR-15-style "ghost gun."  Moreover, beyond these firearms, law enforcement also found a bulletproof vest in the master bedroom closet, which is particularly concerning in light of Alvarez's membership in a known-to-be-violent motorcycle club.  Indeed, law enforcement found all of these items as part of a larger investigation into that club's violent behavior—specifically, Alvarez's participation in a brutal, 90-minute beating of a victim at the club's Vallejo headquarters.

   Finally, it bears noting that this latest offense is not Alvarez's first incident involving a firearm or other dangerous weapon.  Rather, he was convicted in 1993 of possessing a dangerous weapon, he was charged with assault with a deadly weapon causing great bodily injury in 2007, and he was arrested following a traffic stop in Napa, California for carrying a concealed firearm, and a search warrant executed at his home later revealed another firearm—this time, a 12-gauge shotgun.  *See* Pretrial Report at 2–5; Compl. ¶ 14b.  Given the facts of this case—particularly when those facts are considered against the backdrop of his previous criminal history—Alvarez's release pending trial would pose a danger to the community that this Court should not countenance.  *See United States v. McCurin*, 2020 WL 1700030, at *2 (E.D. Cal. Apr. 8, 2020) (denying bail because "'[t]he best predictor of how [a defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one'").

   **B.**  <u>**The Weight of the Evidence Is Strong**</u>

   The second factor described in 18 U.S.C. § 3142(g) likewise supports detention.  Simply put, the weight of the evidence in this case is overwhelming.  There is no mystery in this case.  While executing a valid search warrant at Alvarez's home, law enforcement found a Glock 27 inside a drawer in a bedside table in the home's master bedroom—a room which Alvarez used.  Moreover, the firearm was not alone inside the drawer; instead, next to the firearm in the drawer was a wallet containing Alvarez's

UNITED STATES' OPPOSITION TO MOTION FOR BAIL REVIEW    3

California driver's license. What's more, when questioned by law enforcement about the firearms found in Alvarez's home, Alvarez's wife admitted that—although she was aware of some firearms in the home—she did not know anything about the charged Glock 27. As a result, Alvarez (the only other person living at the home) unquestionably possessed the Glock 27 in violation of 18 U.S.C. § 922(g)(1), which cuts in favor of his continued detention. *See, e.g.*, *United States v. Valles*, 2008 WL 2262620, at *5 (E.D. Cal. June 2, 2008) (detaining defendant where, among other things, "the weight of the evidence [was] extremely strong").

### C. Alvarez's Criminal History Establishes That He Is Both a Danger and a Flight Risk

The third and fourth section 3142(g) factors also support Alvarez's continued detention. As noted above, Alvarez has a lengthy criminal history dating back to at least 1993, and that history well illustrates the serious dangers Alvarez might pose if he is released pending trial. *See, e.g.*, *McCurin*, 2020 WL 170030, at *2. Alvarez's reported criminal record began in 1993, when he was convicted of possessing a dangerous weapon, and in connection with that offense, he failed to appear (and thus had a warrant out for his arrest), and later violated the terms of his probation. *See* Pretrial Report at 2. And over the course of the next several years, Alvarez was the subject of numerous arrests and criminal charges, including domestic-violence-related charges in 2004, 2006, 2007, and 2008, and an assault with a deadly weapon charge in 2007. *See id.* at 2–5. At least one of those domestic-violence charges resulted in a conviction. *See id.* at 4 (indicating a misdemeanor conviction for inflicting a corporal injury on a spouse). What's more, in connection with several of these 2004 to 2008 incidents, the state court had to issue warrants and find probation violations. *See id.* at 3–4. Finally, although there appears to be a break in his criminal history after 2008, it is clear that Alvarez did not remain entirely on the straight and narrow. Instead, he was arrested in 2019 for, among other things, carrying a loaded and concealed firearm, promoting a criminal street gang, and obstructing a public officer. *See id.* at 5; *see also* Compl. ¶ 14b. This substantial criminal history suffices to show that Alvarez is a continuing danger to the community and a flight risk and should therefore remain detained pending trial. *See, e.g.*, *McCurin*, 2020 WL 170030, at *2.

### D. Alvarez's Sureties Do Not Justify His Pretrial Release

Alvarez's argument in favor of release also fails. He claims to have identified several potential

sureties, who are apparently willing to assist with "a small bail." Mot. at 3. But he has not otherwise identified where, specifically, Alvarez will stay upon his release, or who, specifically, will be responsible for monitoring his behavior while out of custody. This proposed release plan is therefore facially deficient. *Cf. United States v. Malauulu*, 2020 WL 7695588, at *4 (E.D. Cal. Dec. 28, 2020) (denying motion for compassionate release in part because the proposed release plan did not include any "meaningful details").

And in any event, the proposal—even if it were to be augmented with more specific information—would not mitigate the government's danger and flight risk concerns. For example, any proposal allowing Alvarez to return to his home of record under the third-party-custody of his wife would be problematic: The home was the scene of Alvarez's crime; and it is the place where law enforcement found at least 8 different firearms, ammunition, and a bulletproof vest. Moreover, Alvarez's wife was apparently unable to adequately police Alvarez's behavior on her own: Despite the fact that her husband was a felon, she kept several firearms that were registered to her in places where Alvarez could easily possess them, and—when questioned about the firearms—she claimed not to know anything about several of them. *See* Compl. ¶¶ 53–54. Put simply, Alvarez's criminal history belies the idea that he is amenable to supervision by his wife—or anyone else—and his motion should be denied. *See, e.g.*, *United States v. Fuller*, 2020 WL 2557337, at *7 (W.D. Wash. May 20, 2020) (denying release despite claims of "familial support" due to the defendant's "lengthy history of serious criminal behavior").

### III.   CONCLUSION

For the foregoing reasons, this Court should deny Alvarez's motion for bail review.

Dated: May 27, 2022

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/ AARON D. PENNEKAMP
AARON D. PENNEKAMP
Assistant United States Attorney